UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GIOVANNI ADDONA, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:14-cv-01757-WWE |
| | : | |
| JARED D'ANDREA, | : | |
| CHRISTOPHER DONSTON, and | : | |
| CHAD CONROY, | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is an action by plaintiff Giovanni Addona against defendants Jared D'Andrea, Christopher Donston, and Chad Conroy, alleging unreasonable force and failure to intervene in violation of the Fourth Amendment to the United States Constitution.

Defendants have moved for summary judgment [ECF No. 35]. For the following reasons, defendants' motion will be granted.

**BACKGROUND**

The following facts are gleaned from the parties' statements of fact, affidavits, deposition transcripts, and other exhibit documentation, including a video of the encounter captured from a police body camera worn by one of the officers at the scene.

On November 4, 2014, at 8:19 p.m., Sergeant Kurt Molnar and Officers Jared D'Andrea, Chad Conroy, and Christopher Donston of the Watertown Police Department were despatched to 283 Neill Drive, Watertown, Connecticut, in response to a complaint received from the Western Connecticut Mental Health Network ("WCMHN").

The officers received a report that plaintiff had called WCMHN and made what was perceived to be a threat of assault with a baseball bat to one of the WCMHN social workers.

Upon arrival, Officer Donston activated his department issued body camera. Defendants assert that the entire encounter between the officers and plaintiff was video recorded. The Court examined that video, which includes audio.

After the officers rang the front door bell, plaintiff walked out into the yard, where defendants explained the reason for their presence. Plaintiff responded that he had called the WCMHN that day to discuss his social security and disability benefits. The officers informed plaintiff that the WCMHN social workers were on their way to speak to him regarding his phone call and the perceived threat, to which plaintiff was amenable.

Plaintiff then proceeded toward the rear entry door, but the officers ordered plaintiff to remain outside. Defendants contend that plaintiff disobeyed their commands, but plaintiff testified that he was "already not going" inside when he was grabbed from behind.

The video supports defendants' version to the extent that it was unclear whether plaintiff would have obeyed defendants' orders to remain outside absent physical involvement by defendants.

Defendants assert that as plaintiff was attempting to reenter the house, Officer Conroy grabbed plaintiff's right arm, and Officer Donston grabbed plaintiff's left arm, in order to prevent plaintiff from entering the residence. According to defendants, the officers moved plaintiff to a nearby wall, and other than a subsequent pat-down, the officers at the scene had no other physical contact with plaintiff. The video corroborates defendants' assertions, including the absence of any high-impact collisions.

Nevertheless, plaintiff maintains that he was needlessly smashed against a brick wall and contends that he felt the bones in his neck crack as his chest hit the bricks. Plaintiff denies that

the entire encounter was recorded. At deposition, plaintiff stated:

> It doesn't show – it doesn't really show – it doesn't really show him pushing. It doesn't show the pushing and slamming; you know what I mean? The way I hit the brick wall. Don't show that part.
>
> * * *
>
> There is a part – that videotape is altered. Trust me, there's parts missing of that.
>
> * * *
>
> There's the part where I hit the brick wall is missing. Because it doesn't show me going backwards with my neck, and sideways turning my neck. It don't show that. And going up with my chest; it don't show that. Parts missing, trust me.

WCMHN social workers Colleen Cherboniak and Gerald Gardiner eventually arrived at the scene, where they informed defendants that plaintiff had repeatedly called their crisis hotline that day. Plaintiff was apparently dissatisfied with WCMHN's response to his calls, and allegedly said something to the effect of: "What do I need to do, show up down there with a bat?"

Subsequently, Mr. Gardiner tried several times to speak to plaintiff about the phone calls and the threat, but he was not able to reason with plaintiff. In view of plaintiff's state of mind, Mr. Gardiner advised Sergeant Molnar that plaintiff should be transported to a hospital for a mental evaluation. While initially reluctant, plaintiff eventually agreed and was transported to Waterbury Hospital. No arrest was made and no charges were filed.

At the hospital, plaintiff received a psychological evaluation, but he was not treated for any physical injuries.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

### Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To lose immunity, an official must violate a right, the contours of which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v.

Creighton, 483 U.S. 635, 640 (1987).  The Supreme Court has repeatedly stressed the importance of resolving the qualified immunity determination at the earliest possible stage in the litigation. Hunter v. Bryant 502 U.S. 224, 227 (1991).

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right."  Hartline v. Gallo, 546 F.3d 95, 102 (2d Cir. 2008).

"[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (1989).  The determination requires a balancing of a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  See Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015).

"Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham 490 U.S. at 396.  Here, defendants briefly restrained plaintiff in order to prevent him from leaving the scene of the investigation.  While plaintiff denies that any physical coercion was necessary to prevent his entry into the residence, he was reluctant to comply with police requests.  When told, "Stay out here for a second," plaintiff responded, "Why?  What do I got to stay out here for?"  When an officer responded, "Because we want to talk to you," plaintiff, in turn, replied, "I'm going inside," and walked

toward the door.  Considering that defendants were responding to a report that plaintiff had threatened physical violence and could be mentally unstable, reasonable police officers could have concluded that plaintiff presented a threat to the safety of the officers or others if permitted to leave the immediate scene.  Moreover, the video of the encounter demonstrates that defendants used only a minor amount of force to restrain plaintiff's ingress.  Indeed, at deposition, plaintiff testified that his own mother, who was a few feet away from the encounter, could not remember plaintiff being slammed into a brick wall.

Plaintiff argues that his version of the encounter in question differs from that of defendants and that defendants ask this Court to disregard plaintiff's sworn testimony.  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Here, as in Scott, the videotape evidence directly contradicts the plaintiff's testimony such that no reasonable jury could believe his testimony.  Under the circumstances, "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice."  See Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995).  Likewise, while all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers, here, defendants had no reason to intervene to protect plaintiff from excessive force by other officers where none was evident.  See Simcoe v. Gray, 577 Fed. Appx. 38, 40 (2d Cir. 2014); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  Accordingly summary judgment will be granted in defendants' favor.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [ECF No. 35] is GRANTED.  The Clerk is instructed to close this case.

Dated this 19th day of September, 2016, at Bridgeport, Connecticut.


    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE